## CHARLES EDWARD ATKINS *v.* STATE OF MARYLAND

[No. 126, September Term, 1978.]

*Decided October 16, 1978.*

The cause was argued before DAVIDSON, WILNER and COUCH, JJ.

*Michael R. Malloy, Assistant Public Defender,* with whom was *Alan H. Murrell, Public Defender,* on the brief, for appellant.

*Ray E. Stokes, Assistant Attorney General,* with whom were *Francis Bill Burch, Attorney General, Robert S. Rothenhoefer, State's Attorney for Frederick County,* and *Mary Ann Stepler, Assistant State's Attorney for Frederick County,* on the brief, for appellee.

COUCH, J., delivered the opinion of the Court.

Charles Edward Atkins was found guilty in a jury trial in the Circuit Court for Frederick County of breaking and entering and malicious destruction of property. He was sentenced to three years incarceration for the breaking and entering and a concurrent three year sentence for malicious destruction of property, both sentences to run consecutive to a sentence then being served on a prior conviction.

The record shows that around 7:30 P.M. on November 4, 1976, the rear door of the business establishment of Ritchie Associates was forcibly pried open and an attempt made to open a safe contained on the premises. During this attempt the door hinges of the safe were damaged, as well as the door itself. Upon discovery of this by a building janitor, the police were notified and responded to the general scene. One of the police officers, arriving in the general vicinity, testified he observed appellant walking on the sidewalk, in the general area of the crime.

Later that same night appellant and two others were arrested on a Sears store parking lot and detained. Appellant was ultimately charged, tried, and convicted of being a rogue and vagabond in connection with the arrest near Sears, for which he was incarcerated at the time of his trial for breaking and entering the Ritchie Associates premises. After being arrested on this charge, the police obtained his clothing and sent it to the F.B.I. Lab for testing. The F.B.I. Lab technician testified that he found particles of material identical to the insulation obtained from the safe itself, in the clothing obtained from appellant.

Appellant, testifying in his own behalf, denied any involvement in the breaking and entering of Ritchie Associates. He testified that he had been riding around since about 6:30 P.M. with two friends, until they were arrested near Sears around midnight. He denied ownership of the pants which the F.B.I. Lab had tested and which were found to contain particles of safe insulation. Appellant produced one Charles Brown, who had been arrested with appellant near Sears, as a witness in his behalf. Brown testified that while he, appellant, and Lee Carroll had been riding around, they had begun riding no earlier than 9:00 P.M.

Appellant presents two questions on appeal:

1. Did the trial court err by basing Appellant's sentence in part on the court's belief that Appellant had been dishonest in maintaining his innocence at trial?

2. Did the trial court err in denying Appellant's motion for judgments of acquittal because the evidence was insufficient?

Appellant contends that the trial court erred in weighing his assertion of innocence in his testimony against him in sentencing, citing *Johnson v. State,* 274 Md. 536, 336 A. 2d 113 (1975), and *Herbert v. State,* 31 Md. App. 48, 354 A. 2d 449 (1976). Appellant's contention is based on the trial judge's articulation of his reasoning during sentencing, where he stated in part:

> "You have indicated to me that you have got absolutely no rehabilitation — you came in here and falsified your testimony on the stand, as believed by the jury and as believed by the Court. You even told them that you were running around with Mr. Brown earlier in the evening that this offense occurred, and Mr. Brown came in and denied that. So you just apparently are unwilling to cooperate with society or cooperate with anyone else. Now, normally under most circumstances I would not run a sentence consecutive in a situation like this, where you are charged with what amounted to two breaking and enterings in one evening. But you have demonstrated to me that you are just not going to cooperate, you're not going to be law-abiding, and therefore the only choice I have is to remove you from society, so society can be protected, and that's what I intend to do."

In *Johnson, supra,* the trial judge, at sentencing, clearly indicated that he felt, as well as the jury, that the defendant lied. He said, "If you had come in here after this happened, before the other trouble you got into — if you had come in

here with a plea of guilty and been honest about [it] and said, 'Of course I did it', which you did, you would probably have gotten a modest sentence. . . . But with this attitude that you have you can't receive that kind of treatment." The Court of Appeals noted that a trial judge permissibly may take into account a wide range of factors at sentencing, including "the demeanor and veracity of the defendant gleaned from his various court appearances," so as to effectuate the three broad objectives of sentencing: punishment, deterrence, and rehabilitation. *Id.* at 540, 336 A. 2d at 115. The Court held, however, that there were restrictions on that wide range of factors, and that the trial judge had exceeded those restrictions by, in effect, penalizing the defendant for his failure to plead guilty.[1] The Court vacated the sentence which had been imposed by the trial judge.

*State v. Herbert, supra,* presented a somewhat similar question to this Court. The trial judge took into consideration at sentencing the fact that the defendant "has maintained his innocence throughout" the trial and sentencing procedures. This Court, speaking through Judge Lowe, held that the trial judge considered an improper factor in sentencing. We said:

> "The mandate of *Johnson* is clear. The protestations of innocence throughout the trial must not influence sentencing 'in any way'."

*Id.* at 56, 354 A. 2d at 453.

The Supreme Court of the United States considered a similar set of facts in *United States v. Grayson,* 438 U. S. 41, 98 S. Ct. 2610, 57 L.Ed.2d 582 (1978). There the trial judge, in giving his reasons for the sentence imposed, indicated that ". . . it is my view that your defense was a complete fabrication without the slightest merit whatsoever. I feel it is proper for me to consider that fact in the sentencing and I will do so." The Supreme Court held that the defendant's truthfulness or mendacity was relevant to sentencing in that

---

1. The Court holding in *Johnson* is limited to that narrow area described — taking into consideration the defendant's failure or election not to plead guilty. While the trial judge's remarks may be read to involve other factors, the Court resolved the doubt in favor of the defendant in finding that the trial judge had used this impermissible consideration.

it showed the defendant's attitudes toward society and prospects for rehabilitation. The Court further held that consideration of the defendant's truthfulness in sentencing neither constituted punishment for a crime — perjury — for which he was not convicted, nor did such consideration impermissibly "chill" a defendant's right to testify in his own behalf.

*Johnson* and *Herbert* are distinguishable from both the case at bar and *Grayson.* The extent of *Johnson's* holding was that the trial judge could not weigh against the defendant at sentencing his election to forego a plea of guilty and be tried by a jury. *Herbert* is limited to any negative consideration of a defendant's protestations of innocence. The trial judge in the case at bar considered neither the defendant's election to be tried nor his protestations of innocence in sentencing. What the trial judge considered was the fact that he felt (and, apparently, so did the jury) that the defendant lied under oath.

The distinction we make between this case and *Herbert* is a fine one, but nonetheless important. We reaffirm the holding in *Herbert* that the trial judge may not weigh against the defendant, at sentencing, his protestations of innocence throughout the proceedings. We hold in this case, however, that while an accused may always protest his innocence, he may not make any other statement which is false, and, if he does, then the trial judge may consider such fact in fixing an appropriate sentence.

In *Grayson,* the Supreme Court furnished some light to enable a clear view of this distinction:

> "The right guaranteed by law to a defendant is narrowly the right to testify truthfully in accordance with the oath — unless we are to say that the oath is mere ritual without meaning. . . . Assuming, *arguendo,* that the sentencing judge's consideration of defendant's untruthfulness in testifying has any chilling effect on a defendant's decision to testify falsely, that effect is clearly permissible. There is no protected right to commit perjury."

Supra at 54, 98 S. Ct. at 2618, 57 L.Ed.2d at 592.

The facts in this case indicate that the trial judge negatively considered only appellant's truthfulness, not his assertions of innocence, in imposing sentence. Accordingly, we find no error.

(2)

We have said in the past that when this question is presented to us it is our duty to review the sufficiency of the evidence to sustain the conviction and, in so doing, we do not inquire into and weigh the evidence to ascertain whether the State has proved its case beyond a reasonable doubt but determine only if there is any relevant evidence adduced at the trial which would properly sustain a conviction. *Spease v. State,* 21 Md. App. 269, 304, 319 A. 2d 560, 579 (1974), *aff'd,* 275 Md. 88, 338 A. 2d 284 (1975). It is axiomatic that the test to be used in determining the legal sufficiency of the evidence to sustain a conviction is whether the evidence shows directly, or supports a rational inference of the facts to be proved from which the trier of facts could fairly be convinced, beyond a reasonable doubt, of the defendant's guilt of the offense charged. *Metz v. State,* 9 Md. App. 15, 262 A. 2d 331 (1970).

The issue before us is not whether the two offenses were committed, but whether they were committed by the appellant. With the evidence before it of the appellant being seen near the scene shortly after the discovery of the crime, and the finding of identical safe insulation material in his clothing as that contained in the subject safe, we have no difficulty concluding that the jury could have fairly inferred that appellant was guilty of the offenses beyond a reasonable doubt.

*Judgments affirmed.*
*Costs to be paid by appellant.*