481 A.2d 1143

**Michael Joseph COLESANTI, Sr.**

**v.**

**STATE of Maryland.**

**No. 1694, Sept. Term, 1983.**

Court of Special Appeals of Maryland.

Oct. 5, 1984.

Leonard Bruce Wade, Salisbury, with whom were Wm. A. Lee Clarke, III, and Clarke & Hearne, P.A., Salisbury, on brief, for appellant.

Richard B. Rosenblatt, Asst. Atty. Gen., with whom were Stephen H. Sachs, Atty. Gen. of Maryland and B. Randall Coates, State's Atty., for Worcester County on brief, for appellee.

Argued before ADKINS and BELL, JJ., and ROBERT L. KARWACKI, Associate Judge of the Eighth Judicial Circuit (now Associate Judge of the Court of Special Appeals), Specially Assigned.

ADKINS, Judge.

The Circuit Court for Worcester County convicted appellant Michael Joseph Colesanti of distribution and possession of phenycyclidine (PCP) and sentenced him to ten years, all but five suspended.[1] Later the sentence was reduced to five years, all but three suspended.

On appeal, Colesanti argues that his conviction should be set aside because of alleged errors relating to the admission of State's Exhibit No. 1—a foil packet containing the incriminating PCP. Mingled with these assertions is the argument that the trial judge made a premature finding of guilt when he admitted Exhibit No. 1 into evidence. Colesanti's final contention is that his sentence should be set aside because the trial judge penalized him for pleading not guilty. We affirm the convictions but vacate the sentence.

---

1. The possession conviction was merged into the distribution conviction.

*State's Exhibit No. 1*

After purchasing a slice of pizza on the Ocean City boardwalk, two undercover police officers, Detective Joseph Kilmer and Officer Kevin Mowrey, proceeded to a nearby bench to consume the snack. Seated on the bench were Colesanti and a female companion. Colesanti asked if the two officers would like to buy some "greens" (PCP). Shortly a deal was consummated whereby Officer Mowrey gave Colesanti's companion two $5.00 bills and Colesanti slipped a small foil packet into the right front pocket of Kilmer's trousers.

Colesanti and his companion were arrested by uniformed officers summoned by Kilmer. A search incident to the arrest produced several other items including two more foil packets. These, together with the suspects, were transported to the Ocean City police station.

Pursuant to § 10–1003 of the Courts and Judicial Proceedings Article, Colesanti filed a demand that the State produce the persons in the chain of custody of the suspected PCP. At Colesanti's bench trial, Detective Kilmer, the first State's witness, testified to the facts we have summarized. He was asked to identify the foil packet Colesanti had placed in his pocket and did so, adding that it contained parsley flakes that "it turned out through analysis ... was [*sic*] found to be treated with Phenycyclidine." The State offered the packet as its Exhibit No. 1. Colesanti's trial counsel objected because of "lack of foundation for the chain of custody and lack of proof of the analysis." The trial judge overruled the objection and admitted the exhibit.

Officer Kilmer then proceeded to give more testimony about the chain of custody of the packet and the other items seized. During his cross-examination, some confusion arose as to whether, during booking at the police station State's Exhibit No. 1 had become intermingled with other exhibits including two identical foil packets that did not contain drugs. The State's case proceeded with the production of Clarence Polk, a forensic chemist, who further testified to

the chain of custody of State's Exhibit No. 1 after it left Officer Kilmer's custody. Polk also confirmed that the exhibit contained PCP. This was the State's case.

The defense presented two witnesses, one of them being Colesanti, both of whom testified, contrary to the thrust of Detective Kilmer's evidence, that all the items seized following Colesanti's arrest had been hopelessly intermingled during the booking process. The purport of this testimony was to cast doubt on whether State's Exhibit No. 1—the packet allegedly given to Kilmer by Colesanti and the only one containing PCP—had been sufficiently established to be that packet. If it had not, Mr. Polk's chemical analysis of its contents would not establish guilt, for he might have analyzed one of the packets seized from Colesanti's companion. Moreover, Colesanti might have been carrying one of the packets which contained lawful substances. That was the extent of the defense, and at the conclusion of its case, it renewed its objection to Exhibit No. 1. The judge overruled the motion.

 Colesanti argues that it was error for the trial judge to admit State's Exhibit No. 1 before all the chain of custody witnesses had been examined. He is right. *Gillis v. State*, 53 Md.App. 691, 456 A.2d 89, *cert. denied*, 296 Md. 112 (1983). Because of his notice under § 10–1003, Colesanti was entitled to require the State to establish that the foil packet was the very packet given by him to Detective Kilmer, that it was unchanged between the time Kilmer received it and the time of trial, and that it contained a controlled dangerous substance. *Gillis, supra*, 53 Md.App. at 697–98, 456 A.2d 89. *Amos v. State*, 42 Md.App. 365, 370, 381, 400 A.2d 468 (1979).

 But, in *Gillis*, several witnesses listed on the chain of custody sheet never testified at all. That was the basis for our reversal there, in light of the appellant's demand for production of those witnesses under § 10–1003. In the case at bar, there were but two persons listed on the chain of custody form: Detective Kilmer and Mr. Polk. Although

the court should not have admitted the evidence until both had testified, both did testify. Polk's testimony was sufficient to show both that he had received a foil packet and that it contained PCP. The fact that in this bench trial the court acted prematurely in admitting the exhibit amounts to no more than harmless error in light of Polk's subsequent testimony. *See Dorsey v. State,* 276 Md. 638, 659, 350 A.2d 665 (1976).

Thus, the chain of custody problem really boils down to the question of whether Kilmer sufficiently identified the packet introduced as the one he received from Colesanti. If he did, there is no question on this record that it was the same packet received and analyzed by Polk.

Colesanti's argument in this regard is based on his (and his witness's) testimony about all the items seized being intermingled on a table in the booking room and on Kilmer's testimony on cross-examination which seemed to indicate at one point that he had placed Exhibit No. 1 on the booking table along with additional evidence, including the other two superficially identical but innocuous foil packets.

The problem with this argument is that Kilmer also testified quite clearly that Exhibit No. 1 was never mingled with other evidence. On direct examination he said that at the police station he had placed the foil packet

> in this exact envelope right here. And it was heat-sealed and submitted to the chemical locker for analysis.

On cross-examination he in essence repeated this testimony and denied that anyone but himself and possibly Polk had handled the packet on the night of the arrest. He denied that he had put State's Exhibit No. 1 on a table in the booking room, although at one point he was equivocal about this, apparently confused about which of two tables defense counsel was referring to. Later he clarified the point:

> I did not put State's Item No. 1 on the table. I believe you are referring to the table in the booking room. It went from my pocket to the table directly in front of me. I got an evidence bag and placed it in the evidence bag

and sealed by myself. It never left my immediate area. It was not touched by any other officer.

■ On this state of the evidence the trial judge was entitled to believe Detective Kilmer and to reject the apparently contrary testimony of Colesanti and his witness. *Henderson v. State*, 13 Md.App. 384, 393, 283 A.2d 418 (1971), *cert. denied*, 265 Md. 748 (1972). The ambiguities we found persuasive in *Amos v. State, supra*, are not present here. At the conclusion of the entire case, when Colesanti renewed his objection to State's Exhibit No. 1, the judge observed:

> Then on top of that we have Officer Kilmer's testimony. He testified that at no time was it on that particular table. So that was the only item he had in his possession. That's the only one he took, because he didn't make the arrest. And I am satisfied that the chain of custody is clear enough. I don't really think there was any mixup at all, if you want to know the truth.

■ This determination on the evidence was not clearly erroneous. Md. Rule 1086. Nor did the trial judge abuse his discretion in rejecting the defense motion to exclude the exhibit at the conclusion of the case. *See Nixon v. State*, 204 Md. 475, 483–84, 105 A.2d 243 (1954).

■ Colesanti mounts a final attack on his conviction by charging that the ruling we have just quoted violated the holdings of *Spence v. State*, 296 Md. 416, 463 A.2d 808 (1983) and *Jones v. State*, 55 Md.App. 695, 466 A.2d 55 (1983) because it amounted to a finding of guilt without permitting his counsel to argue. It was not. Although State's Exhibit No. 1 was critical to a finding of guilt, it is plain that the trial judge was merely ruling on the evidentiary point. As he stated:

> My remarks were not meant nor was I even thinking of guilt or innocence. I was only addressing my remarks exclusively and only to the admissibility of State's Exhibit No. 1.

■ To this defense counsel responded "I would stipulate to that too, Your Honor." It is unclear whether counsel was agreeing that the court had only ruled on the evidentiary question as we think he did, or whether counsel was stipulating to the admissibility of State's Exhibit No. 1. If the former, Colesanti has waived any objection to the allegedly premature verdict; if the latter, he has waived any objection to the admissibility of the exhibit.

In either event, he loses. Later, Colesanti's trial counsel was heard on the question of guilt or innocence. It was not until after this that the judge made his finding of guilt. We see no error here and thus affirm Colesanti's conviction.

### *The Sentence*

It is otherwise as to sentence, however. Colesanti had originally tendered a guilty plea, but upon questioning by the court, changed his mind and pleaded not guilty. After concluding that Colesanti was guilty, and in the course of justifying his sentence, the judge explained:

> You didn't come into court and admit your guilt.... To me, when somebody comes into court and they admit their guilt to me, it shows they are remorseful for what they have done. And I take that into consideration.
>
> I don't think that it's fair to treat someone who comes into court and who publicly acknowledges their guilt with the same hand that you would treat somebody who comes in and denies their guilt.

At a subsequent combined motion for new trial sentence reduction hearing, the judge expanded on this theme:

> I don't ever nor have I ever penalized anybody for pleading not guilty. What I have done and what I will continue to do ... when a person pleads guilty then I do give them some additional considerations. It's a reward to them. It is not a punishment to the people who plead not guilty.

\* \* \* \* \* \*

... Well, if I reward someone because they plead guilty—I'm sorry, I should have said not guilty a while ago. If I reward someone because they plead guilty and say nothing at all in front of you, would you consider that I'm penalizing your person because he pled not guilty?

He concluded:

I have stated, and I am going to state it again on the record, that it is my practice to consider the fact that when people plead guilty that I give them credit for doing that because it does show some sign of remorse.

■■■ We recognize that appellate review of a sentence is limited. If, however, a sentence is the product of impermissible considerations, it cannot stand. *Johnson v. State,* 274 Md. 536, 540, 336 A.2d 113 (1975). As *Johnson* makes plain, imposition of a penalty because a defendant has pled not guilty is such an impermissible factor, and "[a]ny doubt in this regard must be resolved in favor of the defendant." *Id.* at 543, 336 A.2d 113. As the *Johnson* court explained:

Our part in the administration of justice requires that we find that a consideration of Johnson's failure to plead guilty was impermissible because a price may not be exacted nor a penalty imposed for exercising the fundamental and constitutional right of requiring the State to prove, at trial, the guilt of the petitioner as charged. This is as unallowable a circumstance as would be the imposition of a more severe penalty because a defendant asserted his right to counsel or insisted on a jury trial rather than a court trial.

274 Md. at 543, 336 A.2d 113.

Although the State insists that *Atkins v. State,* 40 Md. App. 461, 391 A.2d 868 (1978), *cert. denied,* 284 Md. 741 (1979), should dispose of this issue, we disagree. In *Atkins* the trial judge at sentencing did not consider the defendant's election to plead not guilty nor his protestations of innocence at sentencing. "What the trial judge considered was the fact that he felt ... that the defendant lied under oath." *Id.* at 465, 391 A.2d 868. We held this not to be an

impermissible consideration. In the case at bar, the trial judge expressly advised Colesanti that he rewarded those who pleaded guilty. Necessarily, it follows that he penalized those who pleaded not guilty. To argue otherwise is to debate whether a glass is half empty or half full.

In *Johnson*, the defendant was told that "if you had come in here with a plea of guilty ... you would probably have gotten a modest sentence...." 274 Md. at 539–40, 336 A.2d 113. The Court of Appeals ordered the sentence vacated. In *Herbert v. State*, 31 Md.App. 48, 354 A.2d 449 (1976), the trial judge, at sentencing, took into consideration the fact that Herbert had maintained his innocence throughout the trial. *Id.* at 55, 354 A.2d 449. Relying on *Johnson*, we vacated the sentence.

*Johnson* and *Herbert* are controlling here. Since the trial judge took Colesanti's denial of guilt into consideration at sentencing, he imposed a penalty for pleading not guilty or for maintaining innocence. That consideration was impermissible. The sentence must be vacated.

CONVICTION AFFIRMED. SENTENCE VACATED. CASE REMANDED FOR SENTENCING BEFORE A DIFFERENT JUDGE. COSTS TO BE PAID BY WORCESTER COUNTY.