620 A.2d 401

**Silvano Arnoldo SAENZ,**

v.

**STATE of Maryland.**

**No. 558, Sept. Term, 1992.**

Court of Special Appeals of Maryland.

Feb. 25, 1993.

Harry A. Suissa (Myers & Suissa, on the brief), Silver Spring, for appellant.

Thomas K. Clancy, Asst. Atty. Gen., (J. Joseph Curran, Jr., Atty. Gen., Baltimore, and Andrew L. Sonner, State's Atty., for Montgomery County, Rockville, on the brief), for appellee.

Submitted before WILNER, C.J., and CATHELL and HARRELL, JJ.

CATHELL, Judge.

Silvano Arnoldo Saenz, appellant, was convicted in a jury trial in the Circuit Court for Montgomery County of child abuse and sexual offense in the second degree. The trial court sentenced appellant to ten years on the child abuse conviction and merged the second degree sexual offense conviction into the child abuse conviction. He presents three main issues on appeal:

I. Did the sentencing judge consider that the defendant maintained his innocence after being convicted of a crime as a factor in determining the length of his sentence when the judge stated "I see and hear no remorse from you about this, not one bit" and then expressly included this observation in determining a ten year sentence?

II. Did the sentencing judge abuse his discretion when he departed from the Sentencing Guidelines which recommend a maximum four year period of incarceration and sentenced a defendant convicted of child abuse to ten years without explaining his reasons for imposing the harsh sentence in light of the defendant's respected character and lack of criminal record and where there was no record of physical or psychological trauma to the well adjusted victim and an absence of compelling circumstances?

III. Did the defendant's counsel provide ineffective assistance when he failed to call a potentially important character witness on the defendant's behalf and permitted the jury to be rushed into deciding a verdict without objection?

## The Facts

Appellant's 10–year–old daughter, after identifying the appellant, testified that he made her "suck his private" on the "sofa" in the basement of his house. She testified that

it first occurred when she was five or six. She said that it occurred on different days and would, on occasion, happen while her mother was upstairs cooking dinner. It stopped after appellant moved out of the house for good.

She described the nature of the incidents at some length and graphically. In light of the issues raised, we need not further describe that testimony except to say that the trial court's description of the offenses as "unbelievable" and "heinous" is an understatement.

## I.

### The trial judge did not consider impermissible matters in fashioning the sentence.

There was a separate sentencing proceeding on March 13, 1992, almost two months after appellant's conviction. At that hearing, speaking in the present tense, the trial court stated, "I see and hear no remorse from you about this; not one bit." Saenz now claims that the trial court's statement equates to consideration of an impermissible matter, *i.e.,* appellant's claim of innocence evidenced by his not guilty plea.[1]

We note initially that the trial court's statement referred to appellant's post-conviction demeanor. The trial court expressly referred to appellant's lack of present remorse at the sentencing hearing. The court's sentencing statement came immediately after Saenz's allocution. That allocution included:

> [E]verything that has happened here is because of a big hate and jealousy, because I have been trying for three

---

1. At the conclusion of the judge's sentencing statement, the only comment made by appellant's counsel was "Thank you, Your Honor." Obviously, that statement does not constitute an objection. Thus, it is doubtful that this entire issue was preserved for appeal. We have chosen to address it to clarify that remorse, or the lack thereof, remains an appropriate consideration at sentencing so long as it is considered as it exists after the presumption of innocence no longer remains with a defendant.

and a half years to separate from my children's mother and until now haven't been able to do it.

She always swore that I would never be free from her.... First she used tricks, then she tried to keep me using other ways, pretending the girl was sick.... She wasn't sick. She has recurred to these dirty tricks to accuse me of something that has never been proved; it is just words.

... [A]nd it has been my wife—the child's mother's lies. She has a very smart mind to do all these tricks.

Under the circumstances of this case, the trial court was commenting as an aside at sentencing on appellant's lack of remorse at that hearing. There is no indication anywhere in the record that links the trial court's statement to appellant's original decision to plead not guilty. At the time Saenz displayed the lack of remorse that generated the trial court's remark, the presumption of innocence had been gone for almost two months.

It is clear to us that the trial court properly considered appellant's attitude at the sentencing hearing. In *Wain v. Warden*, 215 Md. 650, 653, 138 A.2d 482 (1958), the Court of Appeals held that a sentencing judge may consider a defendant's attitude at trial in determining the sentence. As to conduct or attitude at hearings after conviction when guilt has been found as a matter of fact, we perceive that *Wain* still permits the consideration of remorse, or lack thereof, displayed after conviction.

In *Johnson v. State*, 274 Md. 536, 542–43, 336 A.2d 113 (1975), the Court held that it was improper to conclude that a defendant's constitutionally protected decision to plead not guilty is a factor that may influence the sentencing judge to the detriment of the accused. The relevant portion of the trial court's colloquy with the defendant in *Johnson* is distinguishable from the present case:

What lesson have you learned when you were not telling the truth ... *at the time of trial?*

. . . .

... The jury didn't accept it and I didn't accept it. You *weren't* telling the truth. [Emphasis added.]

*[I]f you had come in here with a plea of guilty ... you would probably have gotten a modest sentence.... But with this attitude ... you can't receive that kind of treatment.*

274 Md. at 539–40, 336 A.2d 113. In its holding in *Johnson,* the Court opined:

[W]hen Judge Powers said, "if you had come in here with a plea of guilty ... you would probably have gotten a modest sentence," he indicated that he ... punished Johnson more severely because he failed to plead guilty.... the words just quoted manifest that an impermissible consideration may well have been employed.

*Id.* at 543, 336 A.2d 113. *See also Herbert v. State,* 31 Md.App. 48, 55–56, 354 A.2d 449 (1976) (holding that "[t]he mandate of Johnson is clear ... protestations of innocence *throughout* the trial must not influence sentencing 'in any way.' ") (Emphasis added.) *Johnson* and *Herbert* hold that a defendant's exercise of certain rights at *trial,* and his *trial* attitude based upon those rights, may not be considered at sentencing. As we see it, neither case forbids a sentencing judge to consider a defendant's attitude when no presumption of innocence remains, *i.e.,* lack of remorse exhibited at the sentencing hearing. In the case *sub judice,* we perceive the trial court's statement as a response to the attitude of appellant at the sentencing hearing. That, as we understand *Johnson* and *Herbert,* is not prohibited.

The Court of Appeals in *Reid v. State,* 302 Md. 811, 821–22, 490 A.2d 1289 (1985), was faced with a trial court's comment as to its feeling that the defendant may have lacked remorse. The trial court began its sentencing statement by saying, "I don't know whether you really appreciate what you did to that young lady.... This young girl will never be the same." *Id.* at 822, 490 A.2d 1289. In its decision, the Court of Appeals did not address that statement. *Id.* The Court of Appeals was concerned primarily with statements contained in a victim impact statement as

to the length of sentence and accepted the trial court's statement that it had not considered the victim's opinion on that matter. *Id.* Nevertheless, it quoted the judge's statement without comment. *Id.* That statement can certainly be described as a statement that the appellant did not recognize the damage he had done, *i.e.,* a failure to show remorse. To the extent that there can be an inference or dicta by silence, we suggest that it may well be contained in that Court's treatment of the statement we have described contained in *Reid.*

We further contrast the trial court's statement in the case *sub judice* and the statement mentioned without criticism in *Reid* with the statement found to be reversible error in *Colesanti v. State,* 60 Md.App. 185, 193, 481 A.2d 1143 (1984), *cert. denied,* 302 Md. 570, 489 A.2d 1129 (1985):

> You didn't come into court and admit your guilt.... To me, when somebody comes into court and they admit their guilt to me, it shows they are remorseful for what they have done....
>
> I don't think that it's fair to treat someone who comes into court and who publicly acknowledges their guilt with the same hand that you would treat somebody who comes in and denies their guilt.

Later, at a reduction hearing, the trial judge in *Colesanti* reiterated that he gave consideration to the exercise of a defendant's constitutional right to plead not guilty when he said: "What I have done and what I will continue to do ... when a person pleads guilty then I do give them some additional considerations. It's a reward to them." *Id.* Even though the trial judge in *Colesanti* said he did not penalize those who pled guilty, we opined otherwise: "[T]he trial judge expressly advised ... that he rewarded those who pleaded guilty. Necessarily, it follows that he penalized those who pleaded not guilty." *Id.* at 195, 481 A.2d 1143. In the present case, the trial judge limited his consideration to defendant's lack of remorse *at sentencing.* *Colesanti* is therefore distinguishable.

In *Hurley v. State,* 60 Md.App. 539, 560–65, 483 A.2d 1298 (1984), *cert. denied,* 302 Md. 409, 488 A.2d 500 (1985), the trial court commented extensively on the fact that no one had testified describing the circumstances leading up to the killing, that it had no evidence of mitigation, that there was no evidence in regards to the location of the body. The court then said that if the defendant would reveal the location of the body, that would have some impact on the court.[2]

Hurley argued on appeal that the trial court's comments indicated that it had considered the fact that he had remained silent in fashioning its sentence and thus had impermissibly considered his exercise of a constitutional right in imposing the sentence. *Id.* at 560, 564, 483 A.2d 1298. We disagreed saying:

> We note ... that the court's comments are to be read in full context; isolation of a particular passage serves no purpose.... [I]n their entirety, we do not find the impermissible considerations suggested by *Johnson* or *Herbert;* we find only the court's recognition that appellant's conduct *continues* to cause the victims of his crime to suffer.

*Id.* at 565, 483 A.2d 1298 (emphasis added).

In *Vogel v. State,* 76 Md.App. 56, 69–70, 543 A.2d 398 (1988), *aff'd,* 315 Md. 458, 554 A.2d 1231 (1989), the trial court commented to the defendant at sentencing that *"you have to this morning maintained your innocence; ... it means that they have concluded that you are in a state of denial and while you are in that state there is no help that is available ... that can be ... effective."* Vogel

---

**2.** The trial court also gave what has come to be known as a "Christian burial" speech. *Id.* 60 Md.App. at 562, 483 A.2d 1298. That speech, however, was not as effective as the one made by the Iowa police officers on their trip between Davenport and Des Moines which ultimately gave rise to the defendant's revealing the whereabouts of the body of the murder victim and the "inevitable discovery" holding of the Supreme Court. *Nix v. Williams,* 467 U.S. 431, 449 n. 7, 104 S.Ct. 2501, 2512 n. 7, 81 L.Ed.2d 377 (1984).

alleged that the trial court's statements indicated that it impermissibly considered his claim of innocence in fashioning its sentence. *Id.* at 69, 543 A.2d 398. We commented that the trial court had been "thinking aloud about the efficacy of a sentence based on deterrence versus a sentence based on rehabilitation," *Id.* at 69, 543 A.2d 398, and that we considered his statements to be a "thoughtful, a concerned, and a highly commendable consideration of all pertinent sentencing factors." *Id.* at 70, 543 A.2d 398. Judge McGuckian, in the present case, merely considered Saenz's present absence of remorse and contextually made no impermissible consideration.

In *Johnson*, 274 Md. at 543, 336 A.2d 113, the Court of Appeals commented that its view that it is impermissible for a sentencing judge to weigh against a defendant his exercise of his constitutional rights to counsel or a jury trial was shared by nearly all of the courts in the country. It affixed an extensive listing of authority to that effect. 274 Md. at 543, 336 A.2d 113. In respect to the appropriateness of including remorse or the lack of it exhibited during post-trial proceedings, there is substantial authority in federal case law holding that such consideration is permissible. In *United States v. Carter*, 804 F.2d 508, 510 (9th Cir.1986) defense counsel and the prosecutor entered into a plea bargain as to a sentence, and the trial judge participated in that process. Later, the defendant rejected the plea bargain, chose to go to trial, and was convicted. *Id.* at 513. At sentencing his counsel informed the court that other than his client's exercise of his constitutional right to reject the plea bargain and to stand trial, nothing else had happened; thus to impose a heavier sentence would be, in effect, punishing the appellant for exercising a constitutional right. *Id.* The sentencing judge responded in a general sense:

> If the facts are all established and the Government obviously has a good case and the Defendants plead guilty, the Court is entitled to give ... credit for doing just exactly that. Now, I know defense counsel say, oh no,

you're depriving them of their Constitutional rights to exercise their freedom to have a trial.

*But that's not what the Court says.* The Court says those who plead guilty ... would be given credit for that fact.

*Id.* (emphasis added). The Ninth Circuit Court of Appeals, responding to the sentencing judge's remarks, held:

Judge McGovern stated unequivocally that he was not punishing appellants for going to trial.

He distinguished crediting those who plead from punishing those who do not....

. . . .

... Doubtless he was mindful that defendants' rejection of restitution meant that they had not fully accepted responsibility for their actions. This justified a stiffer sentence than that originally proposed in the plea bargain....

The record fails to show that the court improperly imposed harsher sentences.... In fact, the record shows that the court expressly disavowed any such motivation.

*Id.* at 514–15 (footnote omitted). *See also United States v. Rooney,* 866 F.2d 28, 33 (2d Cir.1989) ("[W]e reject Rooney's claim ... that he must have been penalized for insisting on his right to a trial.... Judge Stanton['s] ... sentence ... reflected his belief that Rooney had not accepted responsibility for his actions.").

The Ninth Circuit Court of Appeals in *United States v. Hull,* 792 F.2d 941, 942 (9th Cir.1986), noted that the trial court rejected a recommendation of probation in a presentence report because Hull had failed to express "remorse and had failed to take responsibility for the theft." Hull contended that such consideration in sentencing punished her for exercising her constitutional right against self-incrimination. *Id.* The court rejected the argument stating that admission of guilt is evidence of the first step in rehabilitation. *Id. See also United States v. Perez,* 904 F.2d 142, 147 (2d Cir.1990), *cert. denied,* —— U.S. ——, 111

S.Ct. 1085, 112 L.Ed.2d 1189 (1991) ("In addition, many factors favor relative leniency for those who acknowledge their guilt—often expressing remorse....."); *United States v. Malquist*, 791 F.2d 1399, 1403 (9th Cir.1986), *cert. denied*, 479 U.S. 954, 107 S.Ct. 445, 93 L.Ed.2d 394 (1986) ("[T]he inclusion of Malquist's lack of repentance in the court's sentencing calculus was permissible.").

The Ninth Circuit has also furnished an extensive discussion of the issue of remorse in its earlier case of *Gollaher v. United States*, 419 F.2d 520, 530 (9th Cir.1969), *cert. denied*, 396 U.S. 960, 90 S.Ct. 434, 24 L.Ed.2d 424 (1969):

This case presents a dilemma which every trial judge faces at the time of sentence. It is almost axiomatic that the first step toward rehabilitation of an offender is the offender's recognition that he was at fault.... But to the extent that rehabilitation is the objective, no fault can be found of the judge who takes into consideration the extent of a defendant's rehabilitation at the time of sentence.

If the trial judge makes no mention of his thoughts on this subject, any sentence within legal limits will stand against attack. But, if the judge tells the defendant what he has in mind, the judge can anticipate an attack upon the sentence similar to the one at hand. No matter how artfully it may be put, the defendant will know that if he acknowledges that he has come to recognize his guilt, this may well result in a lesser sentence. He is then up against a hard choice of whether to forego some potential attacks upon the judgment or face a stiffer sentence. If he makes the latter choice, and his conviction is upheld, he is forced to rely upon the action of the Board of Parole. If he is in fact innocent, then he must have faith that this will ultimately be established and act accordingly. On the other hand, after the defendant has been convicted, the judge must proceed upon the basis that the defendant is guilty.

Justice is better served by a forthright disclosure of the state of mind of the judge. While the considerations thus

exposed are difficult, at least the defendant has the advantage of knowing what they are and can make his decisions accordingly. A proper sentence takes into consideration the kind of crime committed and the kind of man who committed it....

... He had before him a man unwilling to take the first step toward rehabilitation and he imposed sentence accordingly. Gollaher's Fifth Amendment rights were not infringed.

The Supreme Court noted in *United States v. Grayson*, 438 U.S. 41, 50, 98 S.Ct. 2610, 2615, 57 L.Ed.2d 582 (1978), that it acknowledged that a "sentencing authority may ... consider the evidence heard during trial, *as well as the demeanor of the accused.*" (Emphasis added.) It then cited the comments of the Second Circuit as a persuasive analysis in *United States v. Hendrix*, 505 F.2d 1233, 1236 (2d Cir.1974):

If the notion of "repentance" is out of fashion today, the fact remains that a manipulative defiance of the law is not a cheerful datum for the prognosis a sentencing judge undertakes.... Impressions about the individual ... the likelihood that he will transgress no more ... the degree to which he does or does not deem himself at war with his society,—are ... central factors to be appraised....

438 U.S. at 51, 98 S.Ct. at 2616.

The state courts have held accordingly. The prosecution appealed a sentencing court's favorable (to the defendant) consideration of repentance in *Commonwealth v. Frazier*, 347 Pa.Super. 64, 500 A.2d 158, 159 (1985). The Superior Court of Pennsylvania noted that the trial court had properly considered that "appellee was contrite" among its sentencing considerations:

Among those factors used to determine a defendant's potential for rehabilitation is his or her manifestation of social conscience and responsibility through contrition, repentance, and cooperation with law enforcement agencies.

500 A.2d at 160 (citations omitted). *See also Common-wealth v. Johnson*, 333 Pa.Super. 42, 481 A.2d 1212, 1214 (1984) (upholding consideration of lack of contrition by the sentencing judge). In another Pennsylvania case, *Commonwealth v. Gallagher*, 296 Pa.Super. 382, 442 A.2d 820, 822 (1982), the court stated that the sentencing court properly based its sentence

> upon the defendant's conduct during the sentencing colloquy which clearly indicated ... the fact that he had no remorse for his crimes and his utter contempt for the legal process.... A criminal defendant's attitude, including a lack of contrition for his criminal conduct, is one of the proper criteria upon which a court may exercise its discretion in sentencing.

The Court of Appeals of Alaska similarly held, in *Davis v. State*, 635 P.2d 481, 487 (Alaska Ct.App.1981), that "it was appropriate for the court, in gauging the weight realistically to be accorded to Davis' rehabilitation, to take into account its belief that Davis ... refused to accept responsibility or accountability for his conduct *at the time of sentencing.*" (Emphasis added.) *See also People v. Shaw*, 124 A.D.2d 686, 507 N.Y.S.2d 918, 919 (1986) (rejecting the defendant's claim that the trial court penalized him for rejecting a plea bargain and choosing to go to trial and noting that the trial court had "properly considered the defendant's lack of remorse...."); *People v. Durkin*, 132 A.D.2d 668, 518 N.Y.S.2d 38, 39 (1987) ("The fact that the sentence imposed after trial is greater than that offered as part of a plea bargain does not automatically establish that in determining the sentence, the trial court improperly increased the defendant's punishment solely for asserting his right to trial.").

As we view the trial court's comment at sentencing in the case *sub judice,* we do not perceive that it considered inappropriate factors. We hold that the trial court's present tense observation of a defendant's lack of remorse, so long as it is not explicitly linked to a defendant's prior claim of innocence or not guilty plea or exercise of his right to

remain silent, is an appropriate factor to consider at sentencing. In light of our decision, it is unnecessary to address further the sub-arguments expressed by appellant in respect to this issue.

## II.

### The trial court did not abuse its discretion in imposing a ten-year sentence.

■ The defendant asserts that the trial court's sentencing of him to a term exceeding the recommended range of the guidelines is an abuse of discretion. In *Teasley v. State*, 298 Md. 364, 370, 470 A.2d 337 (1984), it was argued that the trial court had intended to follow the guidelines but had mistakenly imposed a consecutive sentence in contradiction of the guidelines. The Court of Appeals opined that even if the trial court had mistaken the guideline range, it did not require a sentence vacation and resentencing, holding that "[a]ppellate review of sentences is extremely limited." *Id.* It described those limitations as a sentence not constituting cruel and unusual punishment or violating constitutional requirements; a sentencing judge may "not be motivated by ill-will, prejudice or other impermissible considerations;" and the sentence must comply with statutory limitations. *Id.* It held:

Nothing in the law requires that Guidelines sentences or principles be applied; they complement rather than replace the exercise of discretion by the trial judge.... Nor is it an impermissible consideration, within the contemplation of our cases, for a trial judge not to apply the Guidelines, or to apply them improperly.

*Id.* at 370–71, 470 A.2d 337. *See also Timney v. State*, 80 Md.App. 356, 369–70, 563 A.2d 1121 (1989), *cert. denied*, 318 Md. 324, 568 A.2d 28 (1990) (affirming the sentence because the guidelines are not mandatory nor in any way required; no impermissible considerations were used; and the sentence imposed was "a constitutional, statutorily allowed sentence....").

This claim of error is further meritless in that the trial court gave its reasons for the imposition of its sentence. We have previously commented that we agree that the acts committed here were heinous acts. As we perceive it, when a father compels a 6–year–old daughter to regularly commit fellatio upon him, he commits a serious crime on a person particularly unable to defend herself. Additionally, the circumstances of the occurrences, when some of the criminal acts were arrogantly committed when the girl's mother was present in the house, further support the trial court's observations that he shuddered "to think what would have happened had you spent more time with your children." We also find that the court considered the guidelines in his sentencing statement because he said that he did, and there is no evidence that he did not. A sentence outside the guidelines is not indicative that the guidelines were not considered but only that they were rejected. A rejection of guidelines is contemplated by the guidelines themselves. We perceive no error.

## III.

### Ineffective assistance of counsel.

· ■ The Court of Appeals said in *Harris v. State*, 295 Md. 329, 337, 455 A.2d 979 (1983) (*Harris I*), that "consideration of a claim of ineffective counsel is best left to a post conviction hearing...." *See also Harris v. State*, 303 Md. 685, 691–92 (1985) (*Harris II*); *Trimble v. State*, 321 Md. 248, 257, 582 A.2d 794 (1990), *cert. denied*, 469 U.S. 1230, 105 S.Ct. 1231, 84 L.Ed.2d 368 (1985); *Johnson v. State*, 292 Md. 405, 434–35, 439 A.2d 542 (1982); *State v. Zimmerman*, 261 Md. 11, 24–25, 273 A.2d 156 (1971).

Accordingly, we decline to address the issue of the effectiveness of counsel in this direct appeal.

JUDGMENTS AFFIRMED; COSTS TO BE PAID BY APPELLANT.