664 A.2d 903

**Arnold Jerome JENNINGS, Jr.**

v.

**STATE of Maryland.**

**No. 116, Sept. Term, 1994.**

Court of Appeals of Maryland.

Sept. 14, 1995.

George E. Burns, Jr., Assistant Public Defender, (Stephen E. Harris, Public Defender, both on brief), Baltimore, for petitioner.

Mary Ellen Barbera, Assistant Attorney General, (J. Joseph Curran, Jr., Attorney General, both on brief), Baltimore, for respondent.

Argued before ELDRIDGE, RODOWSKY, CHASANOW, KARWACKI, BELL, and RAKER, JJ., and JOHN F. McAULIFFE, Judge (retired), Specially Assigned.

BELL, Judge.

We granted certiorari in this case to address whether a sentencing court properly may consider, in imposing sentence, a defendant's refusal to accept responsibility, or exhibit remorse, for the crimes for which that defendant has been convicted. The Court of Special Appeals, in an unreported opinion, held that a sentencing court may consider this factor. It thus affirmed the judgment of the Circuit Court for Baltimore County. At the request of Arnold Jerome Jennings, Jr., the petitioner, we granted certiorari and shall now affirm the judgment of the Court of Special Appeals.

**I.**

Because this case involves only the propriety of the trial court's sentencing decision, it is not necessary to set out in detail the facts surrounding the crimes out of which this case arose. It is enough, for context, to recount that as a result of an armed robbery, committed at a restaurant on Pulaski Highway, the petitioner was charged with the use of a handgun in the commission of a felony and the armed robberies of the owner of the restaurant and two of its patrons. Although he has consistently maintained his innocence, a jury in the Circuit Court for Baltimore County convicted the petitioner of all charges. The court then sentenced him to concurrent prison terms. As to the robbery counts the term was 20 years, and for the handgun offense it was five years. The latter sentence was ordered served without parole.

The propriety of the sentence the petitioner received was one of the subjects of the petitioner's appeal to the Court of Special Appeals. The circumstances surrounding its imposition are reflected in the colloquy that occurred after counsel had been heard as to the appropriate disposition. Having been advised that he wanted to address it, the court invited the petitioner to do so, making clear, however, that "what you are about to tell me is very important, very important." The following then occurred:

THE DEFENDANT: Your Honor, jury found me guilty. You have got to sentence me. But when you do, can you make it as least as possible? I'd like to be there with my kid.

THE COURT: Anything further?

THE DEFENDANT: No.

THE COURT: This court doesn't treat lightly the use of handguns in the commission of crimes and more, especially, the type of handgun that was used in this crime.

I cautioned you just before you spoke, Mr. Jennings, that what you had to say to the court was very important because, according to the PSI, according to the statement from your attorney, the jury found the wrong guy guilty.

And until you can face up to your problem of your implication in this little event you haven't learned a thing. For me to give you a minimum sentence just doesn't fit my role.

On the, Count One, sentence of this court would be twenty years to the Department of Corrections; Count Two, twenty years to the Department of Corrections concurrent to Count One; Count Three, twenty years to the Department of Corrections concurrent to Count One; [Count 17], five years to the Department of Corrections to be served without parole and to run concurrent with Count One.

Nothing is going to be suspended because this gentleman does not have any remorse, none whatsoever.

I guarantee you, get a letter thirty days from now. Oh, I'm sorry. I did all that. But there is absolutely no remorse ... I don't either.

THE DEFENDANT: Incarcerate at the Baltimore County Detention?

THE COURT: I gave you an opportunity. I said what you have to say to me is very important.

All I wanted to hear from you is, you know, what implication you had this, in this, because you're an innocent. In your mind you're an innocent man.

Well, I'm sorry. But take your appeal and let's see what happens there.

The petitioner subsequently filed an application for review of sentence. The majority of the three-judge panel appointed for that purpose filed a Memorandum Opinion and Order, in which it ruled that the petitioner's sentence would remain the same, but would be modified by suspending all but 12 years and placing the petitioner on probation upon his release from incarceration.

In the Court of Special Appeals, the petitioner maintained that the trial court based his sentence on an impermissible consideration, i.e., that he did not plead guilty. The intermediate appellate court rejected that argument. While recognizing that a defendant's not guilty plea or protestations of innocence throughout the trial may not properly be consid-

ered, it held that the lack of remorse after conviction may be. It was the latter which the trial court considered when sentencing the petitioner, the Court of Special Appeals said.

■ Having been convicted of three counts of armed robbery and one count of use of a handgun in the commission of a felony, the petitioner's maximum exposure, if the sentence for each convicted count were imposed consecutively, was 80 years, *see* Maryland Code (1957, 1992 Repl.Vol.), Art. 27 §§ 36B(b) and 488, with a mandatory minimum sentence of five years without parole. *See* § 36B(b)(iv). The sentencing guidelines for these offenses, prepared by an agent of the Division of Parole and Probation, reflected an over-all guideline range—for all of the counts—of nine years to 24 years.[1] Both the prosecutor and the petitioner's counsel urged the court to impose a lengthy sentence. They both recommended,

---

1. The Maryland sentencing guidelines were set up by the Maryland Judiciary "to develop sentencing guidelines for voluntary use by circuit court judges to assure that like criminal offenders would receive like sentences for like offenses." *Teasley v. State*, 298 Md. 364, 366, 470 A.2d 337, 338 (1984).

> As applied to crimes against persons, the Guidelines assign various numerical weights to enumerated factors involving the offense and the criminal offender, requiring computation of (1) an offense score and (2) an offender score. . . . After computing both the offense and the offender scores, a sentencing matrix is consulted which sets forth the range of sentences recommended for each combination of offense and offender scores.

*Teasley*, 298 Md. at 366–67, 470 A.2d at 338. The preface to the revised Guidelines makes clear that the Guidelines are not mandatory; they are intended to "complement rather than replace the judicial decision-making process or the proper exercise of judicial discretion." *Id.* at 367, 470 A.2d at 338. *See also Woods v. State*, 315 Md. 591, 603, 556 A.2d 236, 242 (1989); *Durbin v. State*, 56 Md.App. 442, 447, 468 A.2d 145, 148 (1983). "Judges, therefore, may sentence outside the range suggested by the Guidelines, either more or less severely, but in doing so they are requested to state reasons in writing for departing from the range of sentences recommended by the Guidelines." *Teasley*, 298 Md. at 367, 470 A.2d at 338. *See also* Maryland Code (1957, 1992 Repl. Vol.), Art. 27, § 643C (Nothing in Article 27 may be construed to prohibit the use of judicial guidelines in setting sentences; however, the guidelines may not: (1) "Prescribe a sentence exceeding the maximum sentence provided by law" nor (2) "Be used in violation of any mandatory minimum sentence prescribed by law.").

however, that only a portion of it actually be ordered served and that the sentence be one in which the punishments were served concurrently. The petitioner asked the court to suspend all of the sentence except that which could not be suspended, *i.e.*, the five year mandatory minimum portion of the handgun sentence, while the prosecutor suggested that the suspended portion of the sentence should be ten years, leaving ten years to be served by the petitioner. It is with this backdrop that the sentencing proceedings should be viewed.

## II.

The petitioner asserts that he was improperly sentenced for refusing to admit his guilt at the sentencing hearing. He argues that, when imposing sentence, a sentencing court may not consider a defendant's failure to acknowledge guilt after conviction nor may it punish the defendant for "protestations of innocence." Indeed, forcing a defendant to admit guilt at a sentencing proceeding, the petitioner maintains, violates the defendant's privilege against self-incrimination, a privilege which remains viable pending appeal or sentence review. *See Ellison v. State*, 310 Md. 244, 259, 528 A.2d 1271, 1278 (1987).

The State, on the other hand, argues that the sentencing court properly considered the petitioner's refusal to accept responsibility, or exhibit remorse, for his crimes at the sentencing proceeding. According to the State, rather than punishing the petitioner for his "protestations of innocence," the court construed the petitioner's failure to acknowledge his culpability as evidence of a lack of remorse, a fact most relevant to the petitioner's prospects for rehabilitation. This, the State says, is appropriately considered by the sentencing court in the exercise of its sentencing discretion.

## III.

As a threshold matter, we must consider whether we are able to reach the merits of this case. The sentence the petitioner seeks to have us review is not the sentence that the sentencing court imposed. That sentence was significantly

modified by a three-judge panel of the Circuit Court for Baltimore County, in response to an Application For Sentence Review filed by the petitioner. This case is, therefore, arguably moot. See *Adkins v. State*, 324 Md. 641, 646, 598 A.2d 194, 197 (1991); *Robinson v. Lee*, 317 Md. 371, 375, 564 A.2d 395, 397 (1989); *State v. Peterson*, 315 Md. 73, 79–82, 553 A.2d 672, 675–77 (1989); *Attorney General v. Anne Arundel Co. School Bus Contractors Ass'n, Inc.*, 286 Md. 324, 327, 407 A.2d 749, 752 (1979).

Although acknowledging that this is so—that the matter is arguably moot—the State urges that we nevertheless address the merits, asserting that "the issue presented by this case is 'of important public concern.'" State's brief at 3 n. 1 (quoting *State v. Peterson, supra*, 315 Md. at 82–83, 553 A.2d at 677). In *Peterson*, this Court held that it would depart from its general rule in not addressing the merits of a moot question "where the urgency of establishing a rule of future conduct in matters of important public concern is imperative and manifest." *Id.* We applied the same test in *Chertkov v. State*, 335 Md. 161, 170–71, 642 A.2d 232, 237 (1994) (whether a binding plea agreement precludes a trial court from modifying a sentence imposed pursuant to that agreement); *Thanos v. State*, 332 Md. 511, 521, 632 A.2d 768, 772 (1993) (whether a defendant sentenced to death may waive time limitation on execution of death penalty); *Montgomery County v. McNeece*, 311 Md. 194, 200–01, 533 A.2d 671, 674 (1987) (whether Maryland Rule 2–551, dealing with in banc review, is constitutional).

How a trial court's perception that a defendant shows a lack of remorse is to be treated for sentencing purposes is a matter of some significance; it is a matter of important public concern. Accordingly, we shall consider the merits of this case.

## IV.

In Maryland, the primary objectives of sentencing are punishment, deterrence, and rehabilitation. *State v. Dopkowski*, 325 Md. 671, 679, 602 A.2d 1185, 1189 (1992); *Johnson*

*v. State,* 274 Md. 536, 540, 336 A.2d 113, 115 (1975). Because the task of a sentencing court, "within fixed statutory or constitutional limits is to determine the type and extent of punishment after the issue of guilt has been determined," *Williams v. New York,* 337 U.S. 241, 247, 69 S.Ct. 1079, 1083, 93 L.Ed. 1337, 1342 (1949), trial courts are given very broad latitude in the kinds of information they may consider in pursuing those goals. *Id.; Dopkowski,* 325 Md. at 679, 602 A.2d at 1189. Thus, it is very well established in this State that a sentencing court is "vested with virtually boundless discretion" in deciding what factors to consider on the issue of punishment. *Dopkowski,* 325 Md. at 679, 602 A.2d at 1189 (quoting *Logan v. State,* 289 Md. 460, 480, 425 A.2d 632, 642 (1981)). *See also Reid v. State,* 302 Md. 811, 819, 490 A.2d 1289, 1293 (1985) and cases cited therein. The sentencing court's broad discretion does not permit, however, imposition of sentences that are cruel and unusual; violative of constitutional requirements; motivated by ill-will, prejudice, or other impermissible considerations; or that exceed statutory limitations. *See Reid v. State,* 302 Md. at 820, 490 A.2d at 1294; *Teasley v. State,* 298 Md. 364, 370, 470 A.2d 337, 340 (1984). *See also State v. Dopkowski,* 325 Md. at 680, 602 A.2d at 1189; *Johnson v. State,* 274 Md. at 538, 336 A.2d at 114. Moreover, a defendant's sentence should be individualized "to fit 'the offender and not merely the crime.' " *Smith v. State,* 308 Md. 162, 167, 517 A.2d 1081, 1084 (1986) (quoting *Williams v. New York,* 337 U.S. at 247, 69 S.Ct. at 1083, 93 L.Ed. at 1342). Consequently, the defendant's sentence "should be premised upon both the facts and circumstances of the crime itself and the background of the individual convicted of committing the crime." *Dopkowski,* 325 Md. at 679, 602 A.2d at 1189. *See Colvin–El v. State,* 332 Md. 144, 166, 630 A.2d 725, 736 (1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 2725, 129 L.Ed.2d 849 (1994) (noting as relevant factors for the sentencing court: convicted person's reputation, past offenses, health, habits, mental and moral propensities, social background and any other matters a judge ought to have before him or her in determining the sentence that should be imposed); *Huffing-*

*ton v. State,* 304 Md. 559, 577–78, 500 A.2d 272, 281 (1985), *cert. denied,* 478 U.S. 1023, 106 S.Ct. 3315, 92 L.Ed.2d 745 (1986) (institutional history reflecting disciplinary sanction is relevant). *See also United States v. Grayson,* 438 U.S. 41, 45, 98 S.Ct. 2610, 2613, 57 L.Ed.2d 582, 586 (1978) (quoting *Williams v. New York,* 337 U.S. at 248, 69 S.Ct. at 1084, 93 L.Ed. at 1343) ("sentences should be determined with an eye toward the '[r]eformation and rehabilitation of offenders' ").

Although, with the exception of the handgun charge, the sentences imposed by the trial court were the maximum permitted by law for that offense, the trial court by no means exceeded the maximum penalty it could have imposed[2]; the sentence imposed was within applicable statutory limitations. Indeed, the trial court did not exceed the overall guidelines' recommended sentence of 24 years. The petitioner does not challenge the sentences as being cruel or unusual or violative of a constitutional requirement. Nor does the petitioner suggest that the trial court was motivated by ill-will or prejudice. The petitioner's sole contention is that the trial court used an impermissible consideration in imposing the sentence, *i.e.,* his refusal to admit his guilt at sentencing, when his appeal and review rights were still viable.

It is absolutely clear that a trial court may not punish a defendant for invoking his right to plead not guilty and putting the State to its burden of proof for protesting his innocence. *Johnson v. State,* 274 Md. at 542–43, 336 A.2d at 116–17. *See Bordenkircher v. Hayes,* 434 U.S. 357, 363, 98 S.Ct. 663, 668, 54 L.Ed.2d 604, 610 (1978) ("[t]o punish a person because he has done what the law plainly allows him to do is a due process violation of the most basic sort"); *Reid v. State,* 302 Md. at 820, 490 A.2d at 1289; *Teasley v. State,* 298 Md. at 370, 470 A.2d at 340. Conversely, permitting the trial court to base its sentence on "perceptions . . . derived from

---

2. As we have seen, because each offense carries a maximum penalty of 20 years, which could be run consecutively, the maximum exposure the petitioner had was 80 years, with, however, a mandatory minimum of 5 years without parole.

the evidence presented at the trial, the demeanor and veracity of the defendant gleaned from his various court appearances, as well as the data acquired from such other sources as the presentence investigation or any personal knowledge the judge may have gained from living in the same community as the offender" is perfectly acceptable. *Johnson,* 274 Md. at 540, 336 A.2d at 115–16 (footnotes omitted).

Moreover, courts have held that a lack of remorse is an appropriate sentencing consideration inasmuch as acceptance of responsibility is the first step in rehabilitation. *Vogel v. State,* 76 Md.App. 56, 69–70, 543 A.2d 398, 404–05 (1988), *aff'd on other grounds,* 315 Md. 458, 554 A.2d 1231 (1989). *See Christian v. State,* 513 P.2d 664, 670 (Alaska 1973) ("Certainly the offender's unwillingness to accept criminal responsibility can and should be taken into account by the sentencing court."); *Davis v. State,* 635 P.2d 481, 487 (Alaska Ct.App. 1981) ("[I]t was appropriate for the court, in gauging the weight realistically to be accorded to Davis' rehabilitation, to take into account its belief that Davis had falsely testified in his own behalf and, further, that he had refused to accept responsibility or accountability for his conduct at the time of sentencing"); *Cottingham v. State,* 213 Ga.App. 637, 445 S.E.2d 384, 385 (1994) (lack of remorse appropriate sentencing factor); *State v. Waddell,* 119 Idaho 238, 804 P.2d 1369, 1372 (App.1991) (defendant's denial of guilt may be considered in assessing his or her prospects for rehabilitation); *Saenz v. State,* 95 Md.App. 238, 250–51, 620 A.2d 401, 407 (1993) ("trial court's present tense observation of a defendant's lack of remorse, so long as it is not explicitly linked to a defendant's prior claim of innocence or not guilty plea or exercise of his right to remain silent, is an appropriate factor to consider at sentencing"); *Commonwealth v. Frazier,* 347 Pa.Super. 64, 500 A.2d 158, 160 (1985) ("Among those factors used to determine a defendant's potential for rehabilitation is his or her manifestation of social conscience and responsibility through contrition, repentance, and cooperation with law enforcement agencies"); *State v. Tiernan,* 645 A.2d 482, 486 (R.I.1994) ("[W]e hold that the trial justice properly consid-

ered defendant's refusal to admit perpetrating the molestation in his assessment of defendant's rehabilitative potential."); *State v. Speer,* 176 Wis.2d 1101, 501 N.W.2d 429, 440 (1993) (defendant's maintenance of innocence may be considered on question of defendant's likelihood of rehabilitation); *Scales v. State,* 64 Wis.2d 485, 219 N.W.2d 286, 293 (1974) ("an expression of remorse may be considered in mitigation of a sentence").

This Court has never expressly addressed the issue this case presents. We may have addressed it implicitly in *Johnson,* however. In that case, the defendant argued that the trial court had improperly considered, in sentencing, the fact that he had pled not guilty. From the following colloquy this Court determined that the defendant's argument was meritorious:

> The court: What lesson have you learned when you were not telling the truth about it at the time of trial?
>
> The defendant Johnson: I wasn't telling the truth about it?
>
> The court: That's right. The jury didn't believe you about this wild story about a man running out and asking you to hold something; that's perfectly ridiculous. The jury didn't accept it and I didn't accept it. You weren't telling the truth.
>
> The defendant Johnson: I was telling the truth.
>
> The court: Very well. A necessary ingredient to leniency in any case is the attitude of the individual.
>
> The defendant Johnson: Yes sir.
>
> The court: And when you sit up here and lie about it, and you're not telling the truth. You think you're trying to get away with it. That attitude is not consistent with any consideration for leniency. If you had come in here after this happened, before the other trouble you got into—*if you had come in here with a plea of guilty* and been honest about [it] and said, 'Of course I did it,' which you did, *you would probably have gotten a modest sentence, concurrent with the one in the District of Columbia,* and you would have gotten out of it. *But with this attitude that you have*

*you can't receive that kind of treatment.* (Emphasis added).

274 Md. at 539–40, 336 A.2d at 115. Given the Court's subsequent comments concerning the permissible scope of the information a sentencing court could use in fashioning its sentence, *see id.,* and the emphasized portions of the sentencing court's remarks, it is probable that, absent the explicit reference to the defendant's failure to plead guilty and the modest sentence that would have produced, the Court would not have found Johnson's sentence flawed. Indeed, until it referred to the defendant's failure to plead guilty, the sentencing court seemed clearly to be indicating to the defendant that it would not be "lenient" to the defendant because of its perception of the defendant's present attitude. That this Court so construed the sentencing court's remarks to that point is demonstrated by its observation that "[a]lthough a reading of the judge's remarks in full does not necessarily demonstrate that a more severe sentence was imposed, the words just quoted manifest that an impermissible consideration may well have been employed. Any doubt in this regard must be resolved in favor of the defendant." *Id.* at 543, 336 A.2d at 117.

In this case, there is no plea agreement and the record does not reflect that the court had any predisposed sentence range in mind, which had earlier been communicated to the parties. The State did not argue for an enhanced punishment; although it sought a sentence to be served greater than that urged by the petitioner, it, like the petitioner, asked the court to suspend a substantial portion of the sentence imposed. Thus, both the petitioner and the State asked the court to impose a sentence more lenient than that ultimately imposed.

And the circumstances of this case are far different from those in *Johnson.* There is nothing in the record from which it can be discerned that the trial court was, or may have been, of a mind to enter a different, more lenient disposition had the petitioner pled guilty, thus, admitting guilt and assuming responsibility for his actions. What comes through in this

case is the sense that the trial judge was searching for the proper sentence. Unlike in *Johnson*, the remarks of the sentencing court reflect a search for a basis upon which to mitigate, rather than enhance, the petitioner's sentence; the trial court was not looking, and indeed it was not asked, to enhance the petitioner's sentence. It is for that reason that the court informed the petitioner, prior to allocution, that what he was going to say would be most important. It meant, of course, that the petitioner's attitude could have a mitigating impact on the sentence the court would impose.

That this is so is also made clear by the court's subsequent comments that, "For me to give you a minimum sentence just doesn't fit my role" and that no portion of the petitioner's sentence would be suspended because of the petitioner's lack of remorse. In other words, the trial court withheld the benefit of a lesser sentence, rather than imposed an enhanced one. In short, the sentencing court's remarks reflect a refusal to grant the petitioner the benefit of a lesser sentence, as the parties requested, rather than the intentional imposition of a greater one in punishment for the petitioner's refusal to plead guilty or his continuing protestations of innocence.

We hold that a sentencing court may consider, on the issue of a defendant's prospects for rehabilitation, the defendant's lack of remorse. The record in this case does not indicate that the trial court was considering the defendant's refusal to plead guilty. Instead, it was the petitioner's present tense refusal to accept responsibility, or show remorse, for his actions on which the court focused. That factor may be considered in deciding to mitigate the defendant's sentence. No error has occurred in this case.

*JUDGMENT AFFIRMED, WITH COSTS.*

Dissenting opinion by RAKER, J., in which ELDRIDGE, J., joins.

RAKER, Judge, dissenting:

I believe that in this case the sentencing court imposed a penalty on the petitioner because he refused to state that he

was guilty, a right constitutionally protected by the Fifth Amendment to the United States Constitution and Article 22 of the Maryland Declaration of Rights. Because the imposition of a more severe sentence imposed by the trial court infringed upon the fundamental rights of the petitioner, I would reverse the judgment and remand for a new sentencing.

A sentence that does not exceed the maximum penalty permitted by statute is ordinarily not subject to appellate review. We have recognized, however, that there exist limited circumstances where a sentence may be reviewed and vacated because the trial court has abused its discretion. *See State v. Dopkowski*, 325 Md. 671, 680, 602 A.2d 1185, 1189 (1992). The majority recognizes that if the trial judge used an impermissible consideration in imposing the sentence, the sentence must be vacated and the case remanded for resentencing. Majority Op. at 684.

In my view, the trial judge abused his discretion in this case and imposed a sentence based upon improper factors. Considering the court's comments in their entirety, I conclude that the sentence was based on the refusal of Jennings to confess his guilt, and that, had he done so, he would have received a lesser sentence. This is improper under the Fifth Amendment and caused Jennings to pay " 'a judicially imposed penalty for exercising his constitutionally guaranteed rights.' " *Scales v. State*, 64 Wis.2d 485, 219 N.W.2d 286, 293 (1974) (quoting *Thomas v. United States*, 368 F.2d 941, 946 (5th Cir.1966)).

In *Thomas*, the Court of Appeals for the Fifth Circuit reviewed the sentence of a defendant convicted by a jury for bank robbery. The two co-defendants pleaded guilty. At sentencing, the judge told Thomas:

If you will come clean and make a clean breast of this thing for once and for all, the Court will take that into account in the length of sentence to be imposed. If you persist, however, in your denial, as you did a moment ago, that you participated in this robbery, the Court also must take that into account.

368 F.2d at 944. The Court held that "[w]hen Thomas received a harsher punishment than the court would have decreed had he waived his Fifth Amendment rights, he paid a judicially imposed penalty for exercising his constitutionally guaranteed rights." *Id.* at 946. The Fifth Circuit noted that if Thomas chose the first "if" presented to him by the trial court, to "come clean and make a clean breast of this thing," he would effectively forfeit all his post-conviction remedies, including appeal. *Id.* at 945; *see also Christian v. State,* 513 P.2d 664, 670 n. 6 (Alaska 1973) (noting that "it may be unreasonable to expect an offender to admit guilt when his case is on appeal").

In *Johnson v. State,* 274 Md. 536, 336 A.2d 113 (1975), this Court made clear that a sentencing judge may not take into account the failure of a defendant to plead guilty. Following *Johnson,* the Court of Special Appeals held in *Herbert v. State,* 31 Md.App. 48, 354 A.2d 449 (1976), that "protestations of innocence throughout the trial must not influence sentencing 'in any way.'" *Id.* at 56, 354 A.2d at 453 (quoting *Johnson,* 274 Md. at 543, 336 A.2d at 117).

A sentencing judge may legitimately consider the remorse of a defendant as a mitigating factor in imposing a sentence. A refusal to admit guilt, to abandon one's claim of innocence, or to waive the right to a trial, however, cannot become the basis for a more severe sentence.

To be sure, it can be difficult to draw this distinction. Nonetheless, a defendant may not be penalized for asserting his or her legal rights to a trial and appeal, and it is not beyond the competence of a reviewing court to identify improper influences in the sentencing process. "In determining whether sentencing was improperly influenced by a defendant's failure to admit his guilt following a conviction, the court's focus [is] upon whether the sentencing court indicated, whether expressly or impliedly, that there would be better treatment on sentencing if the defendant abandoned his claim of innocence." *People v. Byrd,* 139 Ill.App.3d 859, 94 Ill.Dec. 398, 403, 487 N.E.2d 1275, 1280 (1986).

Here, after a reference to the petitioner's statement in the presentence investigation report that the jury had found the wrong person guilty, the court specifically told petitioner that "until you can face up to your problem of your implication in this little event, you haven't learned a thing." The court then told Jennings that no portion of the sentence would be suspended because he "does not have any remorse, none whatsoever." The court speculated, "I guarantee you, [I'll] get a letter thirty days from now: 'Oh, I'm sorry. I did all that.' But there is absolutely no remorse." The court concluded by telling the petitioner, "All I wanted to hear from you is, you know, what implication you had this, in this, because you're an innocent. In your mind you're an innocent man."

I conclude that these remarks reflect the improper influence on the sentence of the petitioner's continued denial of guilt, and not, as the majority speculates, "the sense that the trial judge was searching for the proper sentence." Majority Op. at 687. Because Jennings received a greater sentence for continuing to protest his innocence, he is entitled to a new sentencing hearing.

Judge ELDRIDGE has authorized me to state that he joins in the views expressed herein.