754 A.2d 493

Garnell GRAVES

v.

STATE of Maryland.

No. 6383, Sept. Term, 1998.

Court of Special Appeals of Maryland.

June 29, 2000.

Claudia A. Cortese, Asst. Public Defender (Stephen E. Harris, Public Defender, on the brief), Baltimore, for Appellant.

Celia Anderson Davis, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Baltimore, and Jack Johnson, State's Atty. for Prince George's County, Upper Marlboro, on the brief), for Appellee.

Argued before WENNER, ADKINS, and PAUL E. ALPERT (Ret., specially assigned), JJ.

PAUL E. ALPERT, Judge (Retired, Specially Assigned).

Sex offenders are the scourge of modern America, the "irredeemable monsters" who prey on the innocent. Al-

though this revulsion is perhaps now more widespread and more acute, it is not unprecedented in the annals of American justice. During the twentieth century alone, those accused or convicted of sex offenses have been the subject of repeated social control strategies, including the "sexual psychopath" laws in effect nationwide since the 1930s, which segregate offenders in mental institutions.

Wayne A. Logan, *Liberty Interests in the Preventive State: Procedural Due Process and Sex Offender Community Notification Laws,* 89 J.Crim.L. & Criminology 1167, 1167 (1999) (footnotes omitted). Thus, we have the backdrop for this appeal, wherein a Maryland appellate court, for the first time, reviews a determination of a "sexually violent predator."

Appellant, Garnell Graves, was charged with child abuse, second degree rape, and third degree sexual offense. Before the Circuit Court for Prince George's County (Mason, J.), he entered an *Alford*[1] plea to the charge of third degree sexual offense. Appellant was sentenced to ten-years incarceration with all but seven years suspended. Appellant was granted leave to appeal.

## QUESTIONS PRESENTED

On appeal, appellant presents two questions, which we have rephrased slightly:

1. Did the court violate due process of law in considering certain matters at sentencing?

2. Did the court err in determining that appellant was a sexually violent predator?

## FACTUAL BACKGROUND

When appellant's *Alford* plea was accepted, the State's Attorney proffered that the evidence presented at trial would have demonstrated that from January 1, 1997, through December 31, 1997, there were several instances when appellant

---

1. *North Carolina v. Alford,* 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970).

touched Brittany R., an eight-year-old girl, with his penis in her vaginal and buttocks areas.

At the sentencing hearing, the State's Attorney first established that in 1992, in the Superior Court of the District of Columbia, appellant was convicted of indecent acts with a minor child. The State's Attorney also presented a copy of the applicable statute to the sentencing court. The State's Attorney then commented that "according to the reporting person, the complainant's father approached the complainant who was his ten year old natural daughter at night while—." Defense counsel objected and argued that the report from which the State's Attorney was reading included charges for which appellant had not been tried or convicted, but that the State's Attorney wanted the court to believe that the allegations were true. Counsel further stated that the State was "unfairly shedding an unfair light on my client to bring up previous allegations." After further discussions, the court stated, "All right, counsel, I think I will be able to separate out [sic]."

The State's Attorney then informed the court that the report from the prior case indicated that the complainant was appellant's ten-year-old daughter, that he had sex with her, and that appellant held his hand over her mouth so that no one would hear her cry out. The abuse was discovered when the child began wetting the bed. A physician examined the child and found signs of sexual abuse. The child told the physician that her father had been placing his penis in her vagina while the grandmother was asleep in the next room.

In the prior case, a motion for reconsideration was filed. Attached to the motion was a letter from appellant in which he wrote: "I am regretting what I did, Your Honor, and will be regretting it for the rest of my life. I feel a great deal of sorrow towards myself for what I have put my child and her mother through."

The State's Attorney also proffered that a psycho-sexual examination had been performed on appellant in connection with the prior case. The State's Attorney stated that appel-

lant had informed the consulting social worker "that he thinks he became sexually involved with his daughter as a way of getting closer, that is expressing love. The statement indicates confusion with love, affection, and sex." Appellant had denied having intercourse with his daughter, but when questioned directly, stated, "I am so against it and I don't know why I did it."

The State's Attorney further commented that in the prior case, it was recommended that appellant enter an intensive, community based sexual offender treatment program under the direct care of a psychiatrist, and appellant was not permitted to align himself with any woman with minor children without the prior approval of his therapist and the court.

The State's Attorney suggested that the circumstances of the present case and the prior case were similar, *i.e.*, that a decision was made "to drop the charges down to spare the child" the trauma of testifying in court. The State's Attorney then stated, "I think that it is very important for the Court to take into consideration and to give extra weight to his prior criminal convictions." [2]

Following further argument from defense counsel, the State's Attorney, and allocution from appellant, the court imposed sentence, stating in relevant part:

Mr. Graves I don't think there is anything that society rejects more than people who pr[e]y on children. You know that, I believe, even in prison. People who pr[e]y on children have a very low place in esteem of the other prisoners.

It's—this is the second time that you have been before a Court for this offense.

One of the things that I think that causes besides just the very nature of the act itself is we don't know what to do with sex offenders, predators who pr[e]y on small children.

---

**2.** Appellant also had a prior conviction for attempted unauthorized use in 1986 and received probation before judgment for possession of PCP in 1988.

We have had very little success with counseling and treatment. They tend to repeat it and repeat it and repeat it.

And if anything, you are just living proof of that, because here after serving time in Lorton and getting counseling, you are back before the Court again.

And even in the presentence report, they talk about the likelihood that counseling is going to help you.

\* \* \*

In imposing the sentence, I haven't [sic] sentenced you beyond what the guidelines recommend, and I have written in the following reasons for that. Lack of remorse, and that's explained by your maintaining of your innocence, repeat of similar offense, and little likely or strong likelihood of repeated offenses.

## DISCUSSION

### A. Propriety of Considerations at Sentencing

On appeal, appellant claims that the court violated due process in sentencing him as it relied on information only identified as coming from the investigation in the prior case. He alleges that there was no indication that those allegations and reports were reliable. Appellant contends that the court's comments at sentencing indicate that it took these unsubstantiated allegations into consideration when it imposed sentence.

■ The State argues that this question is not properly preserved as appellant failed to argue below that the information was unreliable. We disagree. Defense counsel's argument that the state was attempting to have the court accept the allegations as true was sufficient to preserve this question. In any event, appellant's claim is without merit. We explain.

Pursuant to Article 27, § 792(b) of the Maryland Code, the procedures for determining whether an individual can be classified as a "sexually violent predator" are:

*Determination; procedure.*—(1) Subject to paragraphs (3) and (4) of this subsection, if a person is convicted of a

second or subsequent sexually violent offense, the State's Attorney may request the court to determine before sentencing whether the person is a sexually violent predator.

(2) If the State's Attorney makes a request under paragraph (1) of this subsection, the court shall determine before or at sentencing whether the person is a sexually violent predator.

(3) In making a determination under paragraph (1) of this subsection, the court shall consider:

(i) Any evidence that the court considers appropriate to the determination of whether the individual is a sexually violent predator, including the presentencing investigation and sexually violent offender's inmate record;

(ii) Any evidence introduced by the person convicted; and

(iii) At the request of the State's Attorney, any evidence presented by a victim of the sexually violent offense.

"In Maryland, a judge is vested with 'virtually boundless discretion' in deciding what factors to consider on the issue of punishment." *Harrod v. State*, 65 Md.App. 128, 140, 499 A.2d 959 (1985) (quoting *Logan v. State*, 289 Md. 460, 480, 425 A.2d 632 (1981)). "[T]he primary objectives of sentencing are punishment, deterrence, and rehabilitation." *Jennings v. State*, 339 Md. 675, 682, 664 A.2d 903 (1995). "Because the task of a court, 'within fixed statutory or constitutional limits is to determine the type and extent of punishment after the issue of guilt has been determined,' trial courts are given very broad latitude in the kinds of information they may consider in pursuing those goals." *Id.* at 683, 664 A.2d 903 (quoting *Williams v. New York*, 337 U.S. 241, 247, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949)). The sentencing court may properly consider uncharged or untried offenses, *Smith v. State*, 308 Md. 162, 172–75, 517 A.2d 1081 (1986), "reliable evidence of conduct which may be opprobrious although not criminal, as well as details and circumstances of criminal conduct for which the person has not been tried," *Logan v. State*, 289 Md. 460, 481, 425 A.2d 632 (1981) (quoting *Henry v. State*, 273 Md. 131, 147–48, 328 A.2d 293 (1974)),

"a defendant's prospects for rehabilitation, the defendant's lack of remorse," *Jennings*, 339 Md. at 688, 664 A.2d 903, and "the convicted person's reputation, ... health habits, mental and moral propensities, [and] social background," *Baker v. State*, 3 Md.App. 251, 257, 238 A.2d 561 (1968). In addition, it is "perfectly acceptable" for

> the trial court to base its sentence on "perceptions ... derived from the evidence presented at trial, the demeanor and veracity of the defendant gleaned from his various court appearances, as well as the data acquired from such other sources as the presentence investigation or any personal knowledge the judge may have gained from living in the same community as the offender[.]"

*Jennings*, 339 Md. at 684–85, 664 A.2d 903 (quoting *Johnson v. State*, 274 Md. 536, 540, 336 A.2d 113 (1975)).

■ In the present case, although the court heard argument from the State's Attorney regarding the report filed in the prior case, upon objection from defense counsel, the court stated that it would be able to separate out the information. The court was thoroughly qualified to perform such a function. *See, e.g., Graves v. State*, 298 Md. 542, 546, 471 A.2d 701 (1984) (noting that a judge's legal training enables him or her to "distinguish the nuances of the law"); *State v. Babb*, 258 Md. 547, 549–52, 267 A.2d 190 (1970) (finding harmless error in admission of prior conviction evidence in a non-jury case where record revealed ample evidence of accused's guilt and trial court, by reason of its wisdom and experience, is expected to be beyond the influence of such evidence). Moreover, the comments by the court demonstrate that it imposed sentence based on appellant's lack of remorse, that he was a repeat offender, that he preyed upon children, and that there was a strong likelihood that he would again commit such an offense. There is no indication that the court considered any unreliable allegations when it imposed sentence. *See Bangs v. Bangs*, 59 Md.App. 350, 370, 475 A.2d 1214 (1984) ("A judge is presumed to know the law and to properly apply it. That presumption is

not rebutted by mere silence."); *Hebb v. State,* 31 Md.App. 493, 499, 356 A.2d 583 (1976) ("Judges are presumed to know the law. Absent an indication to the contrary, we must presume that judges apply the law correctly to the case before them.") (citations omitted).

It is implicit in the trial judge's remarks that he relied in part on the presentence investigation [3] in complying with the procedural dictates of the subject statute.

## B. Determination of Sexually Violent Predator

Pursuant to Art. 27, § 792(b)(4) of the Maryland Code,[4] the State filed a notice of intent to request the sentencing court to determine whether appellant is a sexually violent predator by virtue of his prior conviction. At the sentencing hearing, the court found appellant to be a sexually violent predator.

---

**3.** The pre-sentence investigation provided, in pertinent part:

> The Defendant appeared before the Court for an offense of an extremely serious nature involving the sexual abuse of a nine year old victim. It is well known that offenses of this nature can have severe, long term effects on victims and can [affect] their lives for years to come. Sadly, this is not the Defendant's first contact with the sexual abuse of young victims in the community, noting that he was convicted of a similar offense in the District of Columbia in 1992 and in fact served a period of incarceration from 1992 through his parole in 1996. Despite that experience with incarceration as well as the counseling he claims to have received during that time, the Defendant ·has returned to the community to once again victimize an innocent young child and in turn cause her years of psychological difficulties and anguish. It is additionally noted that Mr. Graves denies his behavior in this offense and, as a result, not even any remorse is forthcoming. Based on all information available to this Agent, a period of incarceration is recommended, although it is felt that any release to the community in the future should include participation in a sexual offender's program, it is noted that counseling in the past has failed to deter this individual's behavior and further programming in this regard may simply be an effort in futility and wasted resources. Consideration should be given to treatment at Patuxent Institution.

**4.** We reference Art. 27, § 792 of the Maryland Code, as that was in effect at the time appellant committed the offense in question. That section subsequently has been repealed and re-enacted at Art. 27 § 1015, but the changes are inapposite here.

Appellant raises two challenges to the sentencing court's determination that he is a sexually violent predator. First, he alleges that the statute makes no provision for the consideration of an out-of-state conviction; therefore, his prior conviction under the laws of the District of Columbia could not be considered. Second, appellant contends that the court failed to make a determination that he was "at risk of committing a subsequent sexually violent offense," as required under Art. 27, § 792(a)(11)(ii) of the Maryland Code. Appellant contends that the simple fact of a prior conviction cannot substitute for such a finding.

"The cardinal rule of statutory construction is to ascertain and carry out the intent of the legislature." *Montgomery County v. Buckman*, 333 Md. 516, 523, 636 A.2d 448 (1994). "The starting point in statutory interpretation is with an examination of the language of the statute. If the words of the statute, construed according to their common and everyday meaning, are clear and unambiguous and express a plain meaning, we will give effect to the statute as it is written." *Jones v. State*, 336 Md. 255, 261, 647 A.2d 1204 (1994) (citations omitted). In addition, "courts must read all parts of a statute together, with a view toward harmonizing the various parts and avoiding both inconsistencies and senseless results that could not reasonably have been intended by the Legislature." *Barr v. State*, 101 Md.App. 681, 687, 647 A.2d 1293 (1994). "[C]onstruction of a statute which is unreasonable, illogical, unjust, or inconsistent with common sense should be avoided." *D & Y, Inc. v. Winston*, 320 Md. 534, 538, 578 A.2d 1177 (1990).

Because this is an issue of first impression in Maryland, we briefly examine the legislative framework of the sexual offender notification and registration laws. In 1994, the United States Congress enacted the Jacob Wetterling Crimes Against Children and Sexually Violent Offender Registration Program (the Act). *See* 42 U.S.C. § 14071 (1994). This Act established guidelines for sexual offender registration and notification for sexually violent predators and individuals who have been

convicted of either a sexually violent offense or a criminal offense against a minor. *See id.; see also* Caroline Louise Lewis, *The Jacob Wetterling Crimes Against Children and Sexually Violent Offender Registration Act: An Unconstitutional Deprivation of the Right to Privacy and Substantive Due Process*, 31 Harv.L.Rev. 89, 94–95 (1996) (discussing the history and structure of the Act).

Federal law specifies heightened requirements for offenders deemed "sexually violent predators." *See* 42 U.S.C. § 14071(a)(1)(B),(a)(2). A "sexual predator" is "a person who has been convicted of a sexually violent offense and who suffers from a mental abnormality or personality disorder that makes the person likely to engage in predatory sexually violent offenses." *Id.* § 14071(a)(3)(C). Unlike all other potential registrants, federal law makes such offenders alone subject to a judicial determination of their eligibility for registration and notification. *See id.* § 14071(a)(2)(A). The determination is to be "made by a court after considering the recommendation of a board composed of experts in the behavior and treatment of sex offenders, victims' rights advocates, and representatives of law enforcement agencies." *Id.* If the offender is categorized a "sexually violent predator," the state must also obtain "identifying factors, anticipated future residence, offense history, and documentation of any treatment received for the mental abnormality or personality disorder of the person." *Id.* § 14071(b)(1)(B). "Predators" must also provide quarterly address verification, as opposed to the annual verification required of registrants more generally. *Id.* § 14071(b)(3)(B). Finally, "predators" are subject to mandatory lifetime registration. *Id.* § 14071(b)(6)(B)(iii).

As part of the Act, Congress provided pecuniary incentives to the states to adopt laws providing for registration of sex offenders within three years of its enactment. *See* 42 U.S.C. § 14071(f)(1) (Supp. III 1997). Consequently, all fifty-states have adopted some form of sexual offender registration and notification provision for sexually violent predators and indi-

viduals who have been convicted of either a sexually violent offense or a criminal offense against a minor.[5] Significantly, the Federal Guidelines defer to the states to formulate how and when such a determination will be sought as to a particular offender. *See* Final Guidelines for the Jacob Wetterling Crimes Against Children and Sexually Violent Offender Registration Act, as Amended, 64 Fed.Reg. 572, 583 (1999). Given the latitude afforded by Congress, the state enactments vary widely in methods of notification, procedures, and risk deter-

---

5. *See* Ala.Code §§ 13A–11–200 to –203 (1994); Alaska Stat. §§ 12.63.010 to –100, 18.65.087 (Michie 1995); Ariz.Rev.Stat.Ann. §§ 13–3821 to –3825 (West 1989 & Supp.1996); Ark.Code Ann. §§ 12–12–901 to –920 (Michie 1995 & Supp.1997); Cal.Penal Code § 290 (West 1999); Colo.Rev.Stat. § 18–3–412.5 (1998); Conn.Gen.Stat.Ann. §§ 54–250 to –261 (West Supp.1999); Del.Code Ann. tit. 11, § 4120 (1995 & Supp.1998); Fla.Stat.Ann. §§ 775.21, 944.606 (West 1996 & Supp.1999); Ga.Code Ann. § 42–9–44.1 (1997); Haw.Rev.Stat. §§ 707–743 (Supp.1996); Idaho Code §§ 18–8301 to –8326 (Supp.1999); 730 Ill.Comp.Stat.Ann. 15% to /12 (West Supp.1999); Ind.Code Ann. §§ 5–2–12–1 to –13 (West Supp.1998); Iowa Code Ann. § 692A (West Supp. 1999); Kan.Stat.Ann. §§ 22–4901 to –4910 (1995); Ky.Rev.Stat.Ann. §§ 17.500–.540 (Michie 1996); La.Rev.Stat.Ann §§ 15:540–549 (West Supp.1999); Me.Rev.Stat.Ann. tit. 34–A, §§ 11,101–11,105, 11, 121–11,144 (West Supp.1998); Md.Code, art. 27, § 792 (1996 & Supp. 1999); Mass.Gen.Laws Ann. ch. 6, §§ 178C–178O (West Supp.1999); Mich.Stat.Ann. § 4.475 (Law.Co–op.1997); Minn.Stat.Ann. § 243.166 (West Supp.1999); Miss.Code Ann. §§ 45–33–1 to –19 (West Supp. 1998); Mo.Ann.Stat. §§ 589.400–.425 (West 1999); Mont.Code Ann. §§ 46–23–501 to –511 (1997); Neb.Rev.Stat. §§ 29–4001 to –4013 (Supp .1998); Nev.Rev.Stat. §§ 179B, 179D (1997); N.H.Rev.Stat.Ann. § 651–B (Supp.1996); N.J.Stat.Ann. §§ 2C:7–1 to –11 (West 1995 & Supp.1999); N.M.Stat.Ann. §§ 29–11A–1 to –8 (Michie 1997); N.Y. Correct. Law § 168 (McKinney Supp.1999); N.C.Gen.Stat.Ann. §§ 14–208.5 to –208.32 (Lexis Supp.1999); N.D.Cent.Code § 12.1–32–15 (Supp.1997); Ohio Rev.Code Ann. §§ 2950.01–.99 (West 1996 & Supp. 1997); Okla.Stat.Ann. tit. 57, §§ 581–587 (West Supp.1997); Or.Rev. Stat. §§ 181.585–.606 (1997); 42 Pa.Cons.Stat.Ann. §§ 9791–9799.6 (West 1998); R.I. Gen. Laws §§ 11–37.1–1 to .1–19 (Supp.1997); S.C.Code Ann. §§ 23–3–400 to 3–520 (Law.Co–op.Supp.1998); S.D. Codified Laws §§ 22–22–30 to –22–41 (Michie 1998); Tenn.Code Ann. §§ 40–39–101 to –39–110 (1997); Tex.Crim.P.Code Ann. § 62 (West Supp.1999); Utah Code Ann. § 77–27–21.5 (1998); Vt.Stat.Ann. tit. 13, §§ 5401–5413 (1998); Va.Code Ann. § 19.2–390.1 (Michie 1999); Wash.Rev.Code Ann. §§ 9A.44 .130–.44.140, 4.24.550 (West Supp. 1999); W.Va.Code §§ 61–8F–1 to –8F–10 (1998); Wis.Stat.Ann. § 301.45 (West 1999); Wyo.Stat.Ann. §§ 7–19–301 to –19–306 (Michie 1999).

mination. For a cogent discussion of the various state approaches, see Logan, *supra,* at 1175.

Most states have a general sex offender registry, and notification applies uniformly to all sex offenders. Some states employ a tiered risk scaled which ranks offenders on the basis of recidivism risk and releases differing degrees of information based on the ranking.[6] Others states do not make a differentiation based on risk, but instead require offenders that satisfy statutory, offense-related criteria to be subject to registration and notification.[7] A third approach leaves the determination of which offenders should be subject to registration to the discretion of local law enforcement.[8]

States also vary in the procedure for determining whether an offender is a sexually violent predator. In Maryland, the determination is made by the court on the request of the State's Attorney. *See* Md.Code, Art. 27 § 792(b). In other

6. For example, Massachusetts, New Jersey, New York use this approach. *See* Mass.Gen. Laws Ann. ch. 6 §§ 178D, 178K (West 1999); N.J.Stat.Ann. § 2C:7–1 (West 1997); N.Y.Correct.Law § 168 (McKinney 1999).

7. *See* Ala.Code § 15–20–21 (1999); Alaska Stat. §§ 18.65.087, 12.63.010 (Michie 1999); Cal.Penal Code § 290 (West 1999); Conn. Gen.Stat.Ann. §§ 54–250 to –261 (West Supp.1999); Del.Code Ann. tit. 11, § 4121 (1999); 730 Ill.Comp.Stat. 15½ to –/12, 152/105 to –/130 (West 1993 & Supp.1999); Ind.Code Ann. § 5–2–12–4 (West Supp. 1999); Kan.Stat.Ann. §§ 22–4902 to –4909 (1999); Mich.Comp.Laws Ann. §§ 28.722 to .730 (West 1999); Miss.Code Ann. §§ 45–33–1 to –19 (Supp.1999); Mo.Ann.Stat. §§ 589.400 to .425 (West Supp.1999); N.H.Rev.Stat.Ann. §§ 651–B:1 to –B:9 (Supp.1999); N.M.Stat.Ann. §§ 29–11A–2 to –7 (Michie 1997 & Supp.1999); Okla.Stat.Ann. tit. 57, § 581–589 (West 1991 & Supp.2000); S.C.Code Ann. §§ 23–3–400 to – 520 (Law Co–op.1999); S.D. Codified Laws §§ 22–22–31 to –41 (Michie 1999); Tenn.Code Ann. §§ 40–39–101 to –110 (1997 & Supp.1999); Utah Code Ann. § 77–27–21.5 (1999); Va.Code Ann. §§ 19.2–298.1 to – 298.4 (Michie 1995 & Supp.1999).

8. *See* Ariz.Rev.Stat.Ann. § 13–3825 (West Supp.1999); Haw.Rev.Stat. §§ 846E–1 to –9 (Michie 1998); Me.Rev.Stat.Ann tit. 34A §§ 11121 to –11144 (West Supp.1999); Neb.Rev.Stat.Ann. §§ 29–4005, 29–4013 (Michie Supp.1999); N.D.Cent.Code § 12.1–32–15 (1999); Wash.Rev. Code Ann. § 4.24.550(3) (West Supp.1999); Wis.Stat.Ann. §§ 301.45 to –.46 (1999).

states, the determination of classification is made by: a special board, a judicial officer, a clinical professional, or a combination of these methods.[9]

In terms of the quantum and type of evidence sufficient to establish that an offender is a sexually violent predator, each state varies. Some states have promulgated specific factors for consideration.[10] At least eighteen states require the diagnosis of an anti-social personality disorder or mental abnormality that makes the offender likely to commit another

9. *See, e.g.,* N.Y. Correct. Law § 168-l (McKinney Supp.1998) (describing board).

10. *See, e.g.,* N.J.Stat.Ann. § 2C:7–8 (West 1995 & Supp.1999) (including following factors in consideration: whether offender is under supervision or receiving counseling or treatment; physical conditions which would minimize risk reoffense; whether offender's conduct was repetitive and compulsive; whether offender served maximum term; whether offender committed sex crime against child; relationship between offender and victim; use of weapon in commission of offense; number, date, and nature of prior offenses; whether psychological profiles indicate potential recidivism; response to treatment; recent behavior; and any threats made); N.Y. Correct. Law § 168-l (McKinney Supp. 1998) (calling for consideration of following factors: criminal history; indications of mental abnormality; whether conduct was repetitive and compulsive or associated with drugs or alcohol; whether offender served maximum term; whether crime was committed against child; age of offender at time of first offense; relationship between offender and victim; use of weapon; number and date of prior offenses; conditions of release; physical conditions; psychological profiles; response to treatment; recent behavior; any threats indicating intent to reoffend; and review of victim impact statement); Ohio Rev.Code Ann. § 2950.09(B)(2) (West 1996 & Supp.1997) (listing 10 relevant, but not exclusive, factors courts must consider when making a sexual predator determination including: the offender's age; the age of the victim of the sexually oriented offense for which sentence is to be imposed; whether the sexually oriented offense for which sentence is to be imposed involved multiple victims; whether the offender used drugs or alcohol to impair the victim of the sexually oriented offense or to prevent the victim from resisting; any mental illness of mental disability of the offender; the nature of the offender's sexual conduct, sexual contact, or interaction in a sexual contact with the victim of .the sexually oriented offense and whether the sexual conduct, sexual contact, or interaction in a sexual context was part of a demonstrated pattern of abuse; whether the offender, during the commission of the sexually oriented offense for which sentence is to be imposed, displayed cruelty or made one or more threats of cruelty; and any additional behavioral characteristics that contribute to the offender's conduct).

sexually violent crime in order to be labeled a "sexually violent predator,"[11] however, Maryland does not have this requirement.

Article 27, § 792(a)(11) of the Maryland Code defines "sexually violent predator" and states:

(11) "Sexually violent predator" means a person who:

(i) Is convicted of a second or subsequent sexually violent offense;

(ii) Has been determined in accordance with this section to be at risk of committing a subsequent sexually violent offense.

A "sexually violent offense" is defined in Article 27, § 792(a)(9) as:

(i) A violation of any of the provisions of § 462, § 463, § 464, § 464A, § 464B, § 464F of this article; or

(ii) Assault with intent to commit rape in the first or second degree or a sexual offense in the first or second degree as previously proscribed under former § 12 of this article.

Thus, a third degree sexual offense under Article 27, § 464B of the Maryland Code qualifies as a sexually violent offense.

The definitions for "child sexual offender" and "offender" include an individual who has been convicted in another state of an offense that, if committed in Maryland, would constitute one of the listed offenses. Md.Code, Art. 27 § 792(a)(2)(iv) &

---

11. *See, e.g.,* Ariz.Rev.Stat.Ann. § 36–3701(7)(a)–(b) (West Supp.1999); Minn.Stat.Ann. § 253B.02 (West Supp.1997); Fla.Stat.Ann. § 349.912(10)(a)–(b) (West 1999); Ind.Code Ann. § 5–2–12–4.5 (West Supp.1998); Miss.Code Ann. § 45–33–1(1)(a) (West Supp.1998); Mont. Code Ann. § 46–23–502(8) (West 1999); N.C.Gen.Stat.Ann. § 14–208.6(6) (Lexis Supp.1999); N.D. Cent.Code § 12.1–32.15(1)(g) (Supp. 1997); 42 Pa.Cons.Stat.Ann. § 9781 (West 1998); R.I. Gen. Laws § 11–37.1–2(5)(E) (Supp.1998); S.C.Code Ann. § 44–48–30(1)(a)–(b) (Law. Co–op.Supp.1998); Tex.Code Ann. § 841.003(a)(1)–(2) (West Supp. 1999); Vt.Stat.Ann. tit. 13, § 5401(12) (1998); Va.Code Ann. § 37.1–70.1 (Michie 1999); W.Va.Code § 15–12–2(j) (1999); Wyo.Stat.Ann. § 7–19–301(a)(xiv) (Michie 1999).

(a)(6)(x). In addition, a "sexually violent offender" is defined as an individual who:

(i) has been convicted of a sexually violent offense;

(ii) has been convicted of an attempt to commit a sexually violent offense; or

(iii) has been convicted in another state of an offense that, if committed in this State, would constitute a sexually violent offense.

Md.Code, Art. 27 § 792(a)(9).

A "sexually violent predator" must register every 90 days until the person is determined not to be a sexually violent predator. Md.Code, Art. 27 § 792(h)(4). The individual may not file a petition seeking that determination for ten years. Md.Code, Art. 27 § 792(k). In contrast, a "child sexual offender," an "offender," and a "sexually violent offender" must register annually for ten years. Md.Code, Art. 27 § 792(h).[12]

 With regard to appellant's first challenge to the sentencing court's determination, we conclude that out-of-state convictions may be considered in determining whether an individual is a sexually violent predator. As the offenses become more serious and the offenders repeat their behavior, the registration requirements become more onerous. An individual who has been convicted of a second or subsequent offense and is at risk of committing a subsequent sexually violent offense is considered the most serious offender by the legislature, *i.e,* a sexually violent predator. Yet, it is only the subsection that addresses sexually violent predators that excludes the express statement that out-of-state convictions may be considered in the sentencing court's analysis. It is clear that the legislature intended a broad and sweeping registration of sexual offenders. In addition, a sexually violent predator is, in essence, a sexually violent offender who has committed a second sexually violent offense and who has been determined to be at risk of committing a subsequent sexually

---

12. The new act, however, applies only to offenses occurring after the effective date of October 1, 2000. *See supra* n. 4.

violent offense. Accordingly, we decline to read the statute as prohibiting a sentencing court from considering out-of-state convictions when it determines if an individual is a sexually violent predator. The sentencing court committed no error in relying on appellant's prior conviction in the District of Columbia in determining if he was a sexually violent predator.[13]

 We find appellant's second challenge to the sentencing court's determination—that the court failed to determine that he was at risk of committing a subsequent sexually violent offense—to be without merit. Indeed, the record belies appellant's contention. When imposing sentence, the court expressly stated that there has been little success with counseling and treatment of sexual offenders and that there was a strong likelihood that appellant would again be a repeat offender. Although these statements were not made precisely when the court determined that appellant was a sexually violent predator, the statements clearly reflect the court's determination that appellant would again commit a sexually violent offense. There was sufficient information in the presentence report in general and the investigator's comments specifically to support the trial judge's determination that the public would be at risk, i.e., that appellant might again commit a sexually violent offense. The court complied with the requirements of Article 27, § 792(a)(11).

**JUDGMENTS AFFIRMED; COSTS TO BE PAID BY APPELLANT.**

---

13. We note that appellant makes no claim that the court erred in determining that his prior conviction from the District of Columbia, if committed in Maryland, would have been a third degree sexual offense pursuant to Article 27, § 464B of the Maryland Code.